HUGHES *v.* ARKANSAS & OKLAHOMA RAILROAD COMPANY.

GRAVETTE *v.* ARKANSAS & OKLAHOMA RAILROAD COMPANY.

Opinion delivered February 11, 1905.

1. MUNICIPAL CORPORATIONS—RAILROAD CROSSINGS.—Under the general statutory powers of municipal corporations, an incorporated town is authorized to adopt the provisions of Kirby's Digest, §§ 6681-4, with

reference to railroad crossings over roads and highways, by adapting them to railroad crossings over streets and alleys, and substituting the city officials for the county and road district officials. (Page 199.)

2. PENALTY AND DAMAGE—WHEN BOTH NOT RECOVERABLE.—While a suit for damages and one for penalties growing out of the same breach of duty are not always inconsistent, there can be no recovery of both where the penalty is claimed as the damages, and recovery of it is sought as measuring the damages. (Page 200.)

3. FORUM—ELECTION.—Where a municipal corporation was enjoined from prosecuting a suit in the mayor's court to recover penalties under an ordinance, and took an appeal therefrom, and subsequently, during the pendency of such appeal, brought suit in the circuit court to recover the same penalties, it will be deemed to have elected to sue in the latter court, and cannot complain of being deprived of the right to sue in the former. (Page 201.)

4. LAW AND EQUITY—DAMAGE SUIT.—A suit by an incorporated town to recover damages against a railroad company for failure to construct and maintain proper crossings of streets and alleys within such town was properly brought at law, and it was error to transfer the cause to equity. (Page 201.)

Appeals from Benton Chancery Court.

JOHN N. TILLMAN, Judge.

Reversed.

In case No. 5058 the Arkansas & Oklahoma Railroad Company brought suit in chancery against G. A. Hughes, as mayor of the incorporated town of Gravette, alleging that the council of said town had enacted a certain Ordinance No. 41; that defendant has threatened to and will enforce said ordinance, unless restrained from doing so; that the council had no authority to pass said ordinance, and the mayor's court had no authority to assess any penalty thereunder.

The ordinance was in the following terms:

## "ORDINANCE No. 41.

"AN ORDINANCE TO REQUIRE RAILROADS WITHIN THE LIMITS OF THE INCORPORATED TOWN OF GRAVETTE, ARK., TO CONSTRUCT AND MAINTAIN CROSSINGS WHERE THE RAILROAD CROSSES THE PUBLIC STREETS OR ALLEYS WITHIN THE LIMITS OF SAID TOWN.

"Be it ordained by the Council of the Incorporated Town of Gravette, Ark.:

"Section 1. That wherever any railroad corporation has constructed or shall hereafter construct a railroad across any public street or alley within the limits of said town, now established or hereafter to be established, such railroad corporation shall be required to so construct such railroad crossing, or so alter the roadbed of such public street or alley, that the approaches to said railroad bed, on either side, shall be made and kept at no greater elevation or depression than one perpendicular foot for every five feet of horizontal distance, such elevation or depression being caused by reason of the construction of said railroad. Provided, that wherever there may be a cut of sufficient depth in the roadbed of any railroad at the crossing of any public street or alley, such railroad may be crossed by a good and safe bridge, to be maintained in good repair by the railroad company or corporation owning or operating such railroad.

"Section 2. That the crossings at all of the public streets in said town shall not be less than twenty feet in width at the surface or crown of said approaches. Provided, that at the crossing of Main street at the Kansas City, Pittsburg & Gulf Railroad, where said railroad crosses said street, and where the Arkansas & Oklahoma Railroad crosses said street at the railroad crossing of the Kansas City, Pittsburg & Gulf by the Arkansas & Oklahoma, said road shall be of the width of forty feet (40 ft.) at the crown or surface of said crossing. Provided, that the crossings and approaches at the alleys shall not be less than ten feet (10 ft.) in width at the surface or crown of the approaches.

"Section 3. That whenever any railroad company or corporation shall neglect or refuse to construct or keep in good repair such crossing in the manner as prescribed in sections 1 and 2 of this ordinance, it shall be the duty of the marshal or street commissioner of said town to give written notice to the section foreman or boss of that part of the railroad within the limits of said town or to the station agent of said railroad company or corporation in the following form:

"Gravette, Benton County, Ark.............19...
"To the................of the................;.Railroad:

"You are hereby notified that the crossing of the public street named.............or alley between lots........and........ in block.............in said town of Gravette, Ark., is not constructed or maintained as required by Ordinance No.......of said town. And you are hereby requested to so construct or change the construction of said crossing within the next sixty days that it shall conform to the terms and requirements of said ordinance.

........................,
Marshal of the Town of Gravette, Ark.

........................,
"Street Commissioner of the Town of Gravette, Ark.

"Section 4. The marshal or street commissioner of said town shall serve notice as required by the ordinance by copy, and on the neglect or refusal of the railroad company or corporation upon which notice has been served to comply with the terms and requirements of the ordinance within the time specified in the said notice, the said marshal or street commissioner shall file the original notice with the recorder of said town with his return duly made thereon.

"Section 5. Any railroad company or corporation refusing or neglecting to comply with the provisions of the ordinance within sixty days after notice has been served in the manner herein specified shall forfeit and pay to the incorporated town of Gravette, Ark., the sum of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000), and not less than five dollars ($5) per day nor exceeding fifteen dollars ($15) per day for each and every day such refusal or neglect shall continue after the expiration of the sixty days' notice, served on such railroad company or corporation as herein specified.

"Section 6. That this ordinance take effect and be in force from and after its passage and publication."

The answer put the allegations of the complaint as to the town council's power to pass Ordinance No. 41 in issue. On June 4, 1901, the court rendered decree, finding that the town had no power or authority to enact such ordinance, and perpetually enjoining plaintiff and his successors from enforcing or attempting to enforce same.

In case No. 5469, the town of Gravette, on September 5, 1901, sued the Arkansas & Oklahoma Railroad Company in the circuit court, alleging the passage of Ordinance No. 41, *supra;* that defendant was operating and constructing its line of railroad within and through plaintiff's limits and across the streets thereof; that plaintiff's marshal served the required notice on defendant to comply with said ordinance and to construct, maintain and repair its crossings over said streets; and that defendant neglected and failed to repair. The prayer was that the penalties of the ordinance be enforced, and that plaintiff have judgment for damages in the sum of $20,000.

For a second cause of action plaintiff stated that the defendant did, on or about June 1, 1900, wrongfully and unlawfully enter upon the streets of Gravette, "and dig up, carry away and obstruct and plow down said streets of said town, * *. * and built and constructed its line of railroad over and across the same," etc., to the damage of plaintiff in the sum of $20,000.

The answer alleged, among others, the following defenses: (1) that the ordinance was an attempt to enforce the same penalties for obstructing the streets and alleys as the State laws prescribe for obstructing country roads; (2) that the sockholders who owned and controlled defendant's railroad had no notice of the passage of the ordinance or of the service of notice; that the streets could have been put in condition at trifling expense, but the plaintiff's official purposely refrained from making complaint for a year until an enormous amount of penalties had accumulated, and then brought this suit as a big speculation; that the street crossings were in good condition.

A demurrer to the above answer was overruled. The record here recites: "Whereupon this cause is transferred to equity, to which plaintiff excepts."

The court found that defendant was liable to the plaintiff for the amount required to construct proper crossings, and fixed such amount at $170. Plaintiff appealed.

*C. M. Rice,* for appellant.

The jurisdiction of the mayor's court is not limited. Const. 1874, art. 7 § § 1, 43; 53 Ark. 376. Municipal corporations have power to care for, construct, keep in repair, etc., the streets.

2 Dill. Mun. Cor. § 680; Sand. & H. Dig. § 5179; 49 Ark. 140; 52 Ark. 84; 64 Ark. 152; 58 Ark. 494. Penalties and fines imposed must be same as the State law prescribes. Acts 1899, p. 45; 21 Am. & Eng. Enc. Law, 982, 997. The court should not have granted the injunction. 34 Ark. 603; 31 Ark. 473; 62 Ark. 196; 29 Ark. 34; 27 Ark. 675.

*J. A. Rice* and *McGill & Lindsey,* for appellee.

HILL, C. J. These cases are consolidated in this court by consent; No. 5058 being an appeal from a decree perpetually enjoining Hughes, as mayor of Gravette, and his successors in office, from enforcing the provisions of Ordinance No. 41 of said town; and No. 5469 is an appeal by the town from a judgment in its favor for $170 for damages sustained by reason of improper crossing of the public streets by the appellee railroad company. The ordinance in question will be set out by the Reporter in the statement of facts. It is practically a copy of sections 6681-6684, Kirby's Digest, with this change only: wherever the said sections refer to public roads and highways, this ordinance refers to streets and alleys, and assimilates the proceedings to require the railroad to construct crossings over roads and highways to streets and alleys, substituting the city officials for the county and road district officials. The penalty for a violation of it is the same. In the injunction suit, upon no other evidence than the ordinance itself, upon the issues made as to its validity, the chancellor held that the town had no authority or power to enact it, and enjoined the mayor and his successors from enforcing or attempting to enforce it. This was error.

In *Fitzgerald* v. *Saxton,* 58 Ark. 494, this court held that where municipal corporation limits are extended, the jurisdiction and control of the county over highways in such territory is determined, and the city immediately becomes possessed of the same. The control in the easement for the public in streets and alleys is in the town, just as the easement in county highways is in the county. Under the general powers conferred on municipal corporations in section 5438, Kirby's Digest, and the general power over streets and alleys conferred by section 5456, and the power conferred by sections 5460 and 5461, to prescribe by ordinance for the carrying into effect of the powers conferred, it was

within the power and authority of the town council to pass·this ordinance, as it is not 'inconsistent with the laws of the State, but in entire accord therewith. *Van Buren* v. *Wells,* 53 Ark. 368; *Hot Springs* v. *Curry,* 64 Ark. 152; *Texarkana* v. *Leach,* 66 Ark. 40.· The parties to this appeal agree that the decree was not intended to prohibit the enforcement of the ordinance, but merely its enforcement by prosecutions in the mayor's court, which was also one of the issues presented. Be that as it may, it does not so read. However, the proper method of the enforcement of the ordinance for matters arising out of the transaction complained of is a question eliminated from this case by the subsequent action of the town, as developed in case No. 5469, consolidated in this court with No. 5088.

The town appealed from the injunction decree, and that case is the one just discussed, but shortly after the rendition of the decree the town brought suit in Benton Circuit Court against the railroad company on two causes of action—one for the penalties claimed to have accrued under this ordinance, amounting to $20,000, and the other for damages in the same amount for wrongfully and unlawfully entering the streets, "digging up, carrying away, obstructing and plowing down the same." This latter paragraph on demurrer was stricken out, leaving the .complaint claiming $20,000 for penalties; but the paragraph claiming such penalties also alleged that, without condemnation proceeding and without consent of the town, the railroad "dug up, crossed over and appropriated" to its own use certain streets, thereby impairing the public utility and public use and convenience of the streets, to the damage and injury of the town. Instead of concluding with a prayer for damages in consequence thereof, it concluded with prayer for the penalties, but alleged the·amount thereof was "to the plaintiff's damages."

Issue was taken on the validity of the ordinance, and as to the sufficiency of notice under it, and the answer charged that the street crossings complained of could have been put into repair at trifling expense, and that the town had·brought suit for the penalties "as a big speculation," and denied the damage and inconvenience to the public by reason of the crossings. A great deal of testimony was adduced upon these issues, and some upon no issues, but the manifest intention of the town's evidence was

to prove,. not only penalties, but damages, and a large amount of testimony was adduced as to the cost of reconstructing the streets, the necessity of bridging Main street and the cost thereof.   The result was that the chancellor found in favor of the town for $170 as the amount required to construct proper crossings on the streets in controversy.   This course of the town in suing for, seeking and recovering damages was entirely inconsistent with its proceedings to enforce penalties for the same cause.   It is not always the case that a suit for damages and one for penalties are inconsistent; but where the penalty is claimed as the damage, and recovery is sought of it as measuring the damage, clearly there can be no recovery of both.

Furthermore, the town, having elected to sue in circuit court for the penalties, instead of standing upon its asserted rights to recover in mayor's court, cannot now complain of being deprived of such asserted right.   Therefore, the liability of the company to these penalties, and the forum in which to enforce them, are eliminated from this case.

When the findings were settled in this damage-penalty suit by striking out various parts of the railway company's answer, leaving the issues as herein outlined, then follows this entry: "Whereupon this cause is transferred to equity, to which the plaintiff excepts."   There was not a vestige of chancery jurisdiction disclosed by the pleadings.   The suit then pending, and as it was treated by the parties, was one for damages, as contemplated by sections 2959-2961 and 2903-2905, Kirby's Digest. This was, as are all such cases, one peculiarly within the province of a jury.   There was no ground for a transfer to equity, and it was error to have done so, and the town at the time excepted. The chancery case is reversed, with directions to dissolve the perpetual injunction against the mayor and his successors from enforcing the ordinance in question, but with leave to appellee herein to amend its complaint, if so advised, to have the mayor and the town enjoined from enforcing the ordinance in so far as seeking recovery for penalties for the matter covered in the damage suit, only leaving the future operation of the ordinance free of restraint.   In the suit for damages the judgment is reversed, the cause is remanded with directions to transfer the same to the circuit court, there to proceed as from the point where the transfer was ordered.

Mr. Justice BATTLE did not participate.